## STEPHEN W. WILKINS v. THE TOBACCO INSURANCE CO.

W., the owner of an insurance policy, wrote to the company, "Consider your policy, No. 39, as canceled from the 18th inst. and make a new policy from that date for one year, with privilege added, at same rate." The company answered, "I can not agree to proposed change, and therefore cancel, *pro rata,* charging returned premium." A subsequent loss occurred, prior to the date of the expiration of the original policy.

*Held,* that W.'s letter was not a cancellation of the policy, but, until accepted, a mere proposition so to do.

That the proposition was indivisible, and if not accepted as a whole the original contract remained unaltered, and W. was not estopped to sue thereon.

Case reserved from Special Term on motion for new trial.

This action was brought upon a policy of insurance issued by the defendants on the 3d day of July, 1867, to one M. Pyne, by which he was insured, in the sum of $3,000, upon the steamer St. Patrick, against all the usual risks while navigating the Ohio and Mississippi rivers below Cairo, during twelve months from the date of the contract. The policy was afterward assigned by Pyne to the plaintiff.

Two causes of action are alleged in the petition. In the first, damages are claimed for a loss which occurred in October, 1868; in the second count it is averred the defendants are liable for another loss which took place on the 18th day of April, 1868.

There was no dispute, when the case was tried in Special Term, as to the liability of the defendants for the loss first claimed; but it was denied, when the second loss occurred, there was any contract of insurance in existence upon which this action could be brought, the defendants alleging that as early as November, 1867, the policy was canceled by the consent of all parties in interest, and no subsequent liability thereon can now be claimed.

The evidence adduced by the defendants to prove the fact is contained in two letters—the one written by the agent of

the insured, dated St. Louis, November 20, 1867, and directed to the secretary of the defendants, in these words:

"Please consider your policy, number 39—$3,000, M. Pyne, on steamboat St. Patrick—as canceled from the 18th inst., and make a new policy for $3,000 from that date for one year at same rate, 137, valuation $33,750 (fixed by our inspector), limit $22,500, *balance* as old policy, with privilege of Mississippi added. Please send policy and premium note, and I will collect amount due and remit at once.

"Yours truly,     A. W. Howe."

To this letter the secretary replied, on the 24th day of November, 1867:

"Mr. A. W. Howe, St. Louis, Mo., *Dear Sir:* Your favor of the 20th inst. at hand. I can not agree to the proposed change in policy on steamboat St. Patrick, and therefore cancel "pro rata," charging for four and a half months. *Returned* premium, $243.75.     Yours truly,

"Samuel S. Yourtree, *Secretary.*"

No other correspondence then passed between the parties, though it is charged by the defendants their secretary had written a similar note to the insured himself, directed to St. Louis, but there is no proof he ever received it or knew anything of the correspondence that had already passed between the secretary and Howe. It was also in proof that Pyne, the insured, was not a resident of St. Louis but of Memphis, and there was no evidence that the insured, either by himself or his agent, Howe, ever assented to the act of the secretary in canceling the policy, or that they considered it to be canceled, but, on the contrary, while the policy was still in their possession, in the month of April, 1868, the insured applied to the defendants for permission to assign to a third party, which was refused.

Several instructions were asked by the plaintiff's counsel at the trial below, some of which were given to the jury and some refused; those not given were but the statement of the

same proposition in other forms contained in the first instruction asked by the plaintiff. That instruction was this, "That the letter of November 20, 1867, by Howe to the defendant, contains a proposition to cancel the policy and issue another for the same amount, and that the defendant's reply so treats it, and is not an assent to that proposition but a rejection of it, and does not, with the letter first named, constitute a new agreement and a cancellation of the policy sued on."

This charge the court refused to give, and the jury found for the defendants on the second cause of action. A motion for a new trial was made by the plaintiff, and the case was reserved for the opinion of the court in General Term on the motion.

*Lincoln, Smith, Warnock & Stephens,* for plaintiff

*Hoadly, Jackson & Johnson,* contra.

STORER, J. On the case made by the pleadings and the evidence, the only question we are now bound to determine is this: Did the letter of the agent contain a simple request to cancel the policy without qualification or condition, or was it a request to change the policy then existing by the substitution of another?

When the letter was written the contract of insurance would not, by its terms, have expired until July, 1868; and we might well inquire what object would the insured have had to release the underwriters from their contract without any benefit secured to himself, thus virtually abandoning all claim to a security, the terms of which had already been agreed upon, without receiving any equivalent in return.

On the theory of the defendants, as argued by their counsel, the proposition made by the agent authorized the defendants to release themselves from all further liability at once, leaving to their option whether a new policy should be issued upon the terms stated in the proposition, while the

plaintiff, on the other hand, claims it to have been the offer to cancel this policy, on condition a new one should issue with the privilege of navigating the entire Mississippi river instead of that portion of it to which the insured was already restricted.

If we hold the proposition was single only, the rule must be applied that it should be accepted by the party to whom it is addressed according to its terms; there must be no qualification in the assent to be given by the other party, or else there can be no mutuality in the agreement. In the language of Judge Washington, in deciding the case of *Eliason* v. *Henshaw*, 4 Wheaton, 228, "It is an undeniable principle of the law of contracts, that the offer of a bargain by one person to another imposes no obligation on the former until it is accepted by the latter according to the terms in which the offer is made; any qualification of or departure from those terms invalidates the offer unless the same be agreed to by the person who made it; until the terms of the agreement have received the assent of both parties the negotiation is open and imposes no obligation on either." Following this exposition of the law Mr. Parsons, in his work on Contracts, vol. i, 746, very judiciously remarks, "The principle may be stated thus: The assent must comprehend the whole of the proposition; it must be exactly equal to its extent and provisions, and must not qualify them by any new matter." But we need not refer to the cases where the doctrine is admitted without reservation; it would not be a duty on our part, nor add to what is an established canon in the law of contracts. We do not regard the quotations from digests, made frequently without order in the arrangement or even in the chronology of the cases cited, as tending to improve our legal perceptions. or strengthen the argument made in a cause. We presume, without hesitation, that the law upon this point is not to be doubted, and our duty is to apply it to the case before us.

It is said that if the proposition is to be regarded as indivisible, the silence of the agent or the insured himself, after

Wilkins *v*. Tobacco Insurance Co.

the act of the defendants in annulling, as it is claimed they did, their agreement, was evidence of their assent to what was done. Such might be the effect of mere silence, where a party was bound by the relation he bore to another to express his assent or dissent unequivocally. It must be, however, in such a case where an obligation is imposed, not where the debtor informs his creditor that he proposes to cancel or has canceled his liability, without any equivalent being rendered in return. No one, we think, would require of the creditor an express denial of the right of the debtor to discharge an existing liability unless it might be in language not altogether complimentary. Certainly the entire omission to notice what had been done by the debtor could not be seriously held to create an estoppel, in manners, in morals, or in law.

If we recur to the alleged authority in the agent's letter, it is clear to us it must be construed to confer the right to cancel an existing agreement only by substituting another, and if the substitute was refused, while the power is nevertheless claimed to discharge the contract absolutely, the defendants have disregarded altogether the proposition made by the plaintiff's agent, and have acted wholly inconsistently with its terms. As has been already stated there is no evidence that the insured acted upon the supposition there had been a discharge of the defendants' liability; but it would seem the vessel still continued to be navigated without any new insurance in other offices, until she was lost in April, 1868. Now, if the assumption of the defendants can be sustained, the insured must have been, during the whole time, his own underwriter, while months after the alleged cancellation he applied for leave to assign the policy, manifesting thereby he had no idea it did not exist; and it must not be forgotten, the evidence of the cancellation is to be found only in the letter of the secretary, the original policy being always retained by the insured.

We are satisfied there was no evidence of the assent of the insured to the act of the insurer; that any entry made by

the defendants on their books would not justify them in claiming it, as, if made at all, it was unauthorized by the insured, and could not be offered as a defense to the second cause of action in the petition.

We are further of opinion the judge who tried the cause erred in refusing to give the first instruction, as prayed for by the plaintiff, and that the motion made in Special Term, for a new trial, should have been granted.